UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00096-GNS

JONATHAN SMITH                                                          PLAINTIFF

v.

MARINER FINANCE, LLC; and
PIONEER CREDIT COMPANY                                                  DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DNs 18, 28). These

matters are now ripe for adjudication. For the reasons that follow, Defendants' first motion to

dismiss is **DENIED AS MOOT**, and Defendants' second motion to dismiss is **GRANTED IN**

**PART** and **DENIED IN PART**.

### I.      BACKGROUND

**A.      Statement of Facts**

This matter arises from a series of financial and judicial interactions between Plaintiff

Jonathan Smith ("Smith") and Defendants Mariner Finance, LLC ("Mariner") and Pioneer Credit

Company ("Pioneer") (collectively, the "Defendants"). On May 31, 2018, Smith entered into a

Note, Security Agreement & Arbitration Agreement (the "Note") with Defendants that included

$2,494.44 in financing and a precomputed "finance charge" of $1,014.13, which corresponds to a

35.99% APR and a 33.38% annual interest rate. (Compl. ¶¶ 11-15, DN 1; Compl. Ex. A, at 1-2,

DN 1-2).[1] Smith made several payments on the Note, but he became unable to pay in late 2018.

---

[1] The Note was initially between Smith and Pioneer, but Pioneer and Mariner purportedly merged
on November 1, 2018. (Compl. ¶ 19).

(Compl. ¶ 18).   Defendants initiated a collection action in Warren District Court, Case No. 19-C-00162, which resulted in a default judgment (the "Default Judgment") against Smith on March 19, 2019, for $2,666.90 plus interest, court costs, and $880.08 in attorney's fees.[2]   (Compl. ¶¶ 20-31; Compl. Ex. D, at 1, DN 1-5).   On April 1, 2019, Defendants' attorneys served a wage garnishment on Smith's employer for $4,015.79, which Smith alleges overstated the amount due by $468.81. (Compl. ¶¶ 47-49; Compl. Ex. E, at 1, DN 1-6).   Since then, Defendants have garnished an unidentified amount of Smith's wages.  (Compl. ¶ 51).

### B.   **Procedural History**

On July 26, 2019, Smith filed the present lawsuit alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and the Kentucky Consumer Protection Act, KRS 367.110-.360 ("KCPA").  (Compl. ¶ 1).  On September 5, 2019, Defendants filed their first motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Defs.' Mot. Dismiss, DN 18).  Smith filed a First Amended Complaint on November 11, 2019, dropping the claim under the FCRA, retaining claims under the FDCPA and the KCPA, and adding additional state law claims.  (Am. Compl. ¶ 1, DN 26).[3]  On November 29, 2019, Defendants again moved to dismiss.  (Defs.' Mot. Dismiss, DN 28).  Smith responded, and Defendants replied.  (Pl.'s Resp. Defs.' Mot. Dismiss, DN 41; Defs.' Reply Mot. Dismiss, DN 42).

---

[2] Smith alleges that the attorney's fees amount is not reasonable under Kentucky law.  (Compl. ¶¶ 33-35).

[3] The filing of the First Amended Complaint rendered moot the motion to dismiss the Complaint. *See Clark v. Johnston*, 413 F. App'x 804, 811 (6th Cir. 2011) ("When a pleading is amended pursuant to Federal Rule of Civil Procedure 15(a), the amended pleading supersedes the original pleading, i.e., 'the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading.'" (citations omitted)).  The parties apparently recognized this fact:  Defendants moved to dismiss the First Amended Complaint and Smith never responded to the first motion to dismiss.

## II.   JURISDICTION

The Court has subject matter jurisdiction over this action via federal question, 28 U.S.C. § 1331, because the Complaint alleges violations of the FDCPA.  (Am. Compl. ¶¶ 1-2).  The Court has supplemental jurisdiction over the remaining state law claims because they arise from the same case and controversy as the federal claim. 28 U.S.C. § 1367(a).  (Am. Compl. ¶¶ 1-2).

## III.   STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) considers whether the court has subject matter jurisdiction over the matter.  The standards for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) differ in the Sixth Circuit. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Threshold challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should generally be decided before any ruling on the merits under Fed. R. Civ. P. 12(b)(6). *See Bell v. Hood*, 327 U.S. 678, 682 (1946). In most circumstances, a plaintiff bears the burden to survive Fed. R. Civ. P. 12(b)(1) motions to dismiss for lack of subject matter jurisdiction. *Id*.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) considers the sufficiency of the complaint.  In order to survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).  Even so, the Court need not accept a party's "bare assertion of legal conclusions." *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citation

omitted).  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

## IV.    DISCUSSION

As clarified in the First Amended Complaint, Smith alleges the following claims against Defendants:  (1) violations of the FDCPA; (2) violations of the KCPA; (3) violations of Kentucky's usury statute, KRS 360.020; (4) violations of both KRS 453.050 and KRS 286.4-533(3), as actionable under Kentucky's negligence per se statute, KRS 446.070; (5) abuse of process; and (6) unjust enrichment.  (Am. Compl. ¶¶ 75-162).  Defendants contend that each of these claims must be dismissed in full for claim-specific reasons and generally under the *Rooker-Feldman* doctrine.  (Defs.' Mot. Dismiss 1-2).

### A.    Fair Debt Collection Practices Act

The FDCPA generally prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  To establish a prima facie case for a violation of the FDCPA, a plaintiff must show (1) the plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a, (2) the debt arises out of a transaction entered primarily for personal, family, or household purposes, (3) the defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C. § 1692a, and (4) the defendant violated the FDCPA.  *Whittiker v. Deutsche Bank Nat'l Tr. Co.*, 605 F. Supp. 2d 914, 939 (N.D. Ohio 2009) (citing *Duncan v. Citibank*, No. Civ. 06-0246, 2006 WL 4063022, at *5 (D.N.M. June 30, 2006); *Grimard v. Palmer, Reifler & Assocs.*, No. 07-CV-12128, 2007 WL 2287831, at *2 (E.D. Mich. July 31, 2007)).

Defendants do not contest the first two elements, that Smith is a consumer and that the debt was used primarily for personal, family, or household purposes.  Rather, Defendants contend that

the third element is not met because they are "creditors," not "debt collectors" as defined in 15

U.S.C. § 1692a.  (Defs.' Mot. Dismiss 4).  Under the FDCPA, these terms are defined as follows:

> The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

> The term "debt collector" means any person who [1] uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [3] the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(4), (6).  With regards "to a specific debt, one cannot be both a 'creditor' and a

'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive."  *Bridge*

*v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) (citations omitted).

Smith primarily argues that, as to Mariner, the second part of the "debt collector" definition

is met because Mariner initiated the state collection lawsuit in order to collect a debt "due another,"

namely Pioneer. (Pl.'s Resp. Defs.' Mot. Dismiss 13).  Similarly, Smith maintains that Pioneer is

a debt collector under the third part of the definition because the use of Mariner's name indicates

that a third party, Mariner, is attempting to collect such debts.  (Pl.'s Resp. Defs.' Mot. Dismiss

13).  In other words, the crux of Smith's argument is that Mariner acted as a third-party debt

collector when it attempted to collect the debt originated by Pioneer. As recently accepted by the

Supreme Court, the general rule under the FDCPA is that "third party debt collection agents

generally qualify as 'debt collectors' under the relevant statutory language, while those who seek

only to collect for themselves loans they originated generally do not." *Henson v. Santander*

*Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017).  In *Henson*, the Supreme Court went on to

further conclude that those who purchased debt originated elsewhere were not "debt collectors"

5

because they were still collecting a debt owed to themselves, not to someone else—i.e., they were not acting as a third-party debt collection agency who would clearly qualify as a debt collector for FDCPA purposes. *Id*. at 1726.

It is with these general rules in mind that the confusion in the case *sub judice* becomes apparent. Pioneer originated the loan to Smith, so if Pioneer were to collect that debt it would be collecting the debt it originated and thus not be collecting debt that is "due another." Similarly, if Mariner owned the debt at the time of collection, then under *Henson*, Mariner would be collecting the debt now owed to itself and would not be a debt collector. The problem is that, based on the current record, it is unclear who owned the debt and who collected the debt. Pioneer originated the debt to Smith, and then Pioneer merged with Mariner.[4] After Smith defaulted, a collection action was initiated to collect on this debt, which identified the plaintiff as Mariner Finance, LLC FKA Pioneer Credit/Personal Finance Corp. Key here is the "FKA," which identified the plaintiff as Mariner, formerly known as Pioneer. The parties, however, have still not answered the central question: Who owned Smith's debt? It cannot be determined if either Defendant collected debt "due another" without first knowing to whom the debt is actually due. In other words, who is Smith's creditor: Pioneer, Mariner, or another third party?[5]

---

[4] The Amended Complaint states that Pioneer merged with Mariner in November 2018, but that Pioneer is still a registered active foreign corporation with the Kentucky Secretary of State as of at least June 2019. (Am. Compl. ¶ 22). As such, the corporate relationship between Pioneer and Mariner is currently unclear.

[5] Smith also speculates that his Note, along with other loans, *might* have been conveyed to Wells Fargo Bank via the "Mariner Finance Issuance Trust 2018-A," which would make Wells Fargo the true owner of the note at the time of collection. (Pl.'s Resp. Defs.' Mot. Dismiss 15). Consideration of this transaction would undoubtedly take the Court well outside the parameters of a motion to dismiss.

On this point, this Court is mindful of the current posture of this case—a motion to dismiss. As such, Smith's Complaint must be viewed in the light most favorable to him.  If, for instance, Mariner was not the owner of Smith's debt at the time of collection, then Mariner would have been collecting debt "due another."  If, on the other hand, Mariner acquired Smith's debt through merger with Pioneer, then Mariner would have been acting as a creditor collecting its own debt.  *See Conant v. Wells Fargo Bank*, 24 F. Supp. 3d 1, 17 (D.D.C. 2014) ("Accordingly, Plaintiff's FDCPA claim also depends on whether, when, and how Wells Fargo acquired Plaintiff's mortgage. If, as it claims, Wells Fargo acquired Plaintiff's mortgage as part of its 2009 merger with Wachovia at a time when Plaintiff was not in default, then this claim should also be dismissed."); *McDevitt v. Wells Fargo Bank*, 946 F. Supp. 2d 160, 168 (D.D.C. 2013) ("Because the parties agree that Wells Fargo acquired McDevitt's debt in 2009 as part of a merger with Wachovia Mortgage . . . Wells Fargo indisputably is a creditor, not a 'debt collector.'").  Discovery should provide more definitive information on this issue.

Defendants contend that in their motion to dismiss that, because Mariner filed the state collection action, "the only reasonable inference is that Mariner is the creditor and was filing suit to collect on behalf of itself."  (Defs.' Mot. Dismiss 5).  Again though, inferences are not drawn against the non-movant at a motion to dismiss stage.  Moreover, if Pioneer originated the debt and Mariner is the creditor who allegedly owned Smith's debt, then Defendants are presumably in the best position to prove who owned the debt.  Defendants similarly argue that Smith "is unable to point to any rule or pleading requirement that Mariner show how it acquired an ownership interest in the loan."  (Defs.' Reply Mot. Dismiss 2).  What is needed, however, is *proof* about *who* had an ownership interest in the loan at the time of default and at the time of collection.  Upon a motion

to dismiss, this non-record proof cannot be considered.[6]   Regardless, without more information, this claim cannot be dismissed at this time.

### B.   <u>Kentucky Consumer Protection Act</u>

The KCPA makes unlawful any "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ."  KRS 367.170(1).  The KCPA is to have "the broadest application in order to give Kentucky consumers the broadest possible protection for allegedly illegal acts."  *Stevens v. Motorists Mut. Ins. Co*., 759 S.W.2d 819, 821 (Ky. 1988). Defendants argue that their "litigation conduct" cannot serve as the basis for a KCPA claim because it does not qualify as "trade or commerce" for KCPA purposes.  (Defs.' Mot. Dismiss 8). Trade and commerce are defined as "the advertising, offering for sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value, and shall include any trade or commerce directly or indirectly affecting the people of this Commonwealth."  KRS 367.110(2).

The Amended Complaint alleges numerous violations of the KCPA, namely in connection with the transaction that resulted in the Note and Defendants' actions during the state collection action and subsequent wage garnishment.  (Am. Compl. ¶¶ 76-83).  As an initial matter, the transaction resulting in the Note does appear to fall within the scope of the KCPA.  This Court previously concluded that the Kentucky Supreme Court "would find th[e] sale of credit to be a

---

[6] If this Court were to accept and consider evidence from outside the pleadings, the motion to dismiss would likely need to be considered a motion for summary judgment.  *See Max Arnold & Sons, LLC v. W.L. Hailey & Co*., 452 F.3d 494, 503 (6th Cir. 2006).  Answering who is a "debt collector" under the FDCPA does generally seem to be a question more appropriately considered on a motion for summary judgment.  For instance, the second definition of debt collector is not merely one collecting debt due another, it is one who *regularly* collects debt due another. Certainly, the sort of documentation needed to prove or disprove the extent to which Defendants regularly collects debt due another (or not) would have to come from outside the present record and would require discovery.

'service' within the meaning of the KCPA." *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 792 (W.D. Ky. 2003); *see also Stevens*, 759 S.W.2d at 820 (holding that "the purchase of an insurance policy is a purchase of a 'service' intended to be covered by the [KCPA].").  It is tougher to determine, however, whether Defendants' subsequent litigation conduct constitutes "trade or commerce" for KCPA purposes.  If the sale of credit constitutes a "service" under *Stafford*, it seems logical to conclude that subsequently collecting on that credit is part and parcel of the "service" provided by the creditor.  In other words, it appears contradictory to conclude that a creditor is subject to the KCPA when granting credit, but not when using state courts to collect on that credit.[7]

To counter this point, Defendants point to *Bennett v. Ford Motor Co*., No. 5:07-CV-115, 2008 WL 4000558 (W.D. Ky. Aug. 25, 2008), in which this Court concluded that actions taken by a defendant to defend itself "in the conduct of litigation" was not an action taken "in the conduct of trade or commerce." *Id*. at *3.  This case is helpful, but it is also distinguishable.  The litigation conduct at issue in *Bennett* arose out of the defendant's *defense* of the federal court KCPA action itself, not the *prosecution* of a state court collection action as Defendants have done here.  *Id*.  It is one thing to allow allegedly unfair prosecutorial conduct to be the basis for a *subsequent* KCPA claim; it is another thing entirely to allow defensive conduct to bolster a KCPA claim in the very same lawsuit.

---

[7] The Court also takes notice that one of the plaintiff's KCPA claims in *Stafford* was that the defendant bank "took advantage of, and attempted to extort money from consumers through threats and false reporting," *Stafford*, 262 F. Supp. 2d 776, 791-92, which is collection type activity that a debt collector might attempt before resorting to filing a collection lawsuit. *See Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x 297, 304 n.5 (6th Cir. 2008) (accepting without deciding that reporting debt to a credit reporting agency constituted "collection activity") (citation omitted).

Smith contends that the proper framing of this issue is whether "trade or commerce" encompasses "collection activity," not whether it encompasses "litigation conduct" more generally.  Kentucky decisions do not appear to provide any guidance, however, on whether allegedly unfair collection activities trigger the KCPA.  In *Smith v. Discover Bank*, No. 6:14-CV-151, 2015 WL 1021423 (E.D. Ky. Mar. 9, 2015), a sister court considered a motion to dismiss plaintiff's FDCPA and KCPA claims that were premised on two allegations:  "that the collection action against [plaintiff] was time barred when [defendants] filed it . . .[and] that they filed falsified documents in the Perry Circuit Court action . . . ."  *Id*. at *1.  While not specifically addressing the question of whether collection activities fall within the gamut of the KCPA, the Court allowed the KCPA claims to survive motions to dismiss.  *Id*. at *3.  That court again took up the case on a motion for summary judgment, considering the allegation that the defendants filed falsified statements in a collection action.  *Smith v. Discover Bank*, No. 6:14-CV-151, 2016 WL 2733130, at *2 (E.D. Ky. May 10, 2016).  The court ultimately granted summary judgment because the plaintiff had failed to point to an "ascertainable loss of money or property" as required by KRS 367.2201(1).  *Id*.  Summary judgment was granted because plaintiff had failed to prove an element essential to her KCPA claim, however, not because the KCPA did not apply to the collection action initiated and litigated by defendants.

A similar result occurred in a case principally relied on by Defendants, *Lucky v. Kentucky Bank (In re Lucky)*, No. 05-54625, 2011 Bankr. LEXIS 5734 (Bankr. E.D. Ky. Mar. 21, 2011).  In *Lucky*, the bankruptcy court considered a KCPA claim premised on the disclosure of private information in a bankruptcy proof of claim.  *Id*. at *21-23.  As noted by Defendants, the court stated that the "filing of a proof of claim is not done in the 'conduct of trade' as required for a claim based on the KCPA . . . ."  *Id*. at *22-23.  As highlighted by Smith, however, the *Lucky* court

10

provides no analysis to support this conclusory statement.  (Pl.'s Resp. Defs.' Mot. Dismiss 17).

Moreover, before reaching this point, the *Lucky* court identified three other distinct reasons why

the plaintiff's claim failed under the KCPA framework.  In other words, as in *Smith*, the bankruptcy

court in large part dismissed on KCPA grounds, not because the KCPA did not apply.

Smith also points to a series of cases from other jurisdictions to support his argument that

collection activity is generally covered by consumer protection laws.  (Pl.'s Resp. Defs.' Mot.

Dismiss 16-17).  These cases demonstrate a marked trend of interpreting state consumer protection

laws to cover collection related activities.  In *Guzman v. Mel S. Harris & Associates, LLC*, No. 16

CIV. 3499, 2018 WL 1665252 (S.D.N.Y. Mar. 22, 2018), the court concluded that the persistent

filing of fraudulent debt collection lawsuits was within the scope of New York General Business

Law § 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or

commerce or in the furnishing of any service . . . ."  *Id*. at *12; N.Y. Gen. Bus. Law § 349(a).  In

*Morgan v. Vogler Law Firm*, No. 4:15-CV-1654, 2017 WL 4387351 (E.D. Mo. Oct. 3, 2017), the

court considered an unlawful collection suit under the Missouri Merchandising Practices Act §

407.020, which proscribes "deception, fraud, false pretense, false promise, misrepresentation,

unfair practice or the concealment, suppression, or omission of any material fact in connection

with the sale or advertisement of any merchandise in trade or commerce . . . ."  *Id*. at *6-7; Mo.

Stat. § 407.020(1).  In *Sneed v. Winston Honore Holdings, LLC*, No. 16-C-2564, 2017 WL 467686

(N.D. Ill. Feb. 3, 2017), the court held that fraudulent service of process in connection with a

foreclosure action was actionable under the Illinois Consumer Fraud Act § 505/2, which makes

unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices . . . in the

conduct of any trade or commerce."  *Id*. at *5; 815 Ill. Comp. Stat. 505/2.  Finally, in *Gallagher v.*

*Funeral Source One Supply & Equipment Co*., No. 14-CV-115, 2015 WL 773737 (D.N.H. Feb.

24, 2015), the court flatly rejected the argument that abusive litigation practices cannot serve as the basis for a claim under the New Hampshire Consumer Protection Act § 358-A:2, which prohibits "any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." *Id.* at *3; N.H. Rev. Stat. Ann. § 358-A:2.[8]

Defendants refute these cases, pointing out that none of them interpret the KCPA and that the other consumer protection statutes offer "wildly different" scopes of protection. (Defs.' Reply Mot. Dismiss 8). Defendants are correct, of course, that these out-of-jurisdiction cases interpret different consumer protection laws that offer somewhat different scopes of protection. To characterize them as "wildly different" is misleading, however. To the contrary, as enumerated in the previous paragraph, the respective consumer protection laws all proscribe roughly the same behavior and afford consumers similar protections against deceptive practices in the context of trade or commerce. Defendants' attempt to distinguish this body of persuasive authority is therefore largely unavailing. Absent clear guidance from the Kentucky Supreme Court on this issue, in light of the national trend toward extending consumer protection laws to cover collection activity and even litigation conduct and the admonition that the KCPA is to have the broadest possible application, Defendants' motion to dismiss is denied as to the KCPA claims.

Defendants also contend that a particular part of Smith's KCPA claim should be dismissed, namely Smith's allegation that "the $10.00 non-filing fee was not used to purchase insurance in lieu of perfecting a security interest." (Am. Compl. ¶¶ 18, 81, 125; Defs.' Mot. Dismiss 10). Under KRS 286.4-533(1), a consumer loan company may charge a "fee, or premium for insurance, in

---

[8] There are numerous other cases reaching similar results interpreting different state consumer protections laws. *See, e.g.*, *Refuse & Envtl. Sys., Inc. v. Indus. Servs. of Am., Inc.*, 932 F.2d 37, 43 (1st Cir. 1991) (Massachusetts); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Small Smiles Holding Co., LLC*, 781 F. Supp. 2d 597, 602 (M.D. Tenn. 2011) (Tennessee); *Merdes & Merdes, P.C. v. Leisnoi, Inc.*, 410 P.3d 398, 411 (Alaska 2017) (Alaska).

lieu of perfecting a security interest . . . ."  The Note issued by Pioneer charges such a fee, but the Amended Complaint alleges that this fee was not actually used to purchase insurance, "[u]pon information and belief."  (Am. Compl. ¶ 18).  Defendants persuasively argue that Smith has completely failed to provide any factual basis for this allegation.  (Defs.' Mot. Dismiss 10).  *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) ("A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  (citation omitted)).  Because Smith has not responded to this argument, he has conceded it.  *See Shaibi v. Louisville & Ind. R.R. Co*., No. 3:19-CV-00928-GNS, 2020 WL 1539936, at *1 (W.D. Ky. Mar. 31, 2020) (citing *Figueroa v. U.S. Postal Serv*., 422 F. Supp. 2d 866, 879 (N.D. Ohio 2006)).  Smith's claim regarding the $10 non-filing fee is dismissed.

### C.  <u>Usury</u>

The Amended Complaint alleges that Defendants charged Smith usurious interest in violation of KRS 360.010 and 360.020 via the collection action and subsequent wage garnishment. (Am. Compl. ¶¶ 87-91, 131-135).  As previously noted, the Note was for $2,494.44 plus a $1,043.13 pre-computed finance charge, which corresponds to a 35.99% APR and a 33.38% annual interest rate.  (Am. Compl. ¶¶ 16-17; Am Compl. Ex. A, at 1-2, DN 26-1).  Under KRS 360.010 and 360.020, relied on by Smith, the maximum legal rate of interest is generally 8% a year.  As noted by Defendants, however, the relevant provision governing the Note is KRS 286.4-530(1) of the Kentucky Consumer Loan Act, which permits "charges not in excess of three percent (3%) per month [36% annually] on any loan where the original principal amount of the loan is not in excess of three thousand dollars ($3,000) . . . ."  The Note's 33.38% interest rate with a principal amount of less than $3000 thereby complies with KRS 286.4-530(1).

Smith takes issue instead with the collection complaint and subsequent Default Judgment that ultimately awarded Defendants "the sum of $2,666.90, with interest thereon in accordance to the agreement . . . ." (Am. Compl. Ex. D, at 1, DN 26-4). Smith argues that there can be no interest rate "in accordance to the agreement" because the Note included a precomputed finance charge, not an interest rate. (Pl.'s Resp. Defs.' Mot. Dismiss 8-9). A consumer loan company can in some circumstances, however, convert a precomputed loan into a simple interest loan if the company rebates the unearned finance charge. *See* KRS 286.4-530(7)-(8). Smith then contends that there is no evidence that Defendants actually rebated the unearned finance charge, which would prevent conversion of the Note to a simple interest loan. (Pl.'s Resp. Defs.' Mot. Dismiss 8). If Smith took issue with the way the Default Judgment awarded interest on the Note, however, his recourse was directly with the Warren District Court or on appeal. As such, Smith's freestanding usury claim runs afoul of the *Rooker-Feldman* doctrine.

Through its decisions in *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court established the general rule that district courts lack jurisdiction to review state court judgments. Under the *Rooker-Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). This doctrine, however, does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 293 (2005). Rather, the doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284. When applying this doctrine, the Sixth Circuit looks to the source

of the plaintiff's injury: "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury . . . then the plaintiff asserts an independent claim." *Berry v. Schmitt*, 688 F.3d 290, 299 (6th Cir. 2012) (citation omitted). Relatedly, the source of a plaintiff's harm is closely connected to the relief that is requested. *Id*.

The source of Smith's usury claim is the interest that was awarded in the Warren District Court Default Judgment. It is not the interest rate as set forth in the Note, which Smith appears to now concede is valid on its face under KRS 286.4-530(1). And while Smith complains about the interest rate requested in the collection complaint, it is not this complaint that has caused him harm. It is the Default Judgment issued by the district court. Smith's argument that Defendants failed to properly prove that they rebated the unearned finance charges essentially argues that the Warren District Court had insufficient evidence to award Defendants interest on the Note. Smith in essence is asking this Court to review and amend a Default Judgment already decided upon by the state court. If Defendants pushed for an interest rate that was usurious or improper under the Note, then Smith should have litigated that issue before the Warren District Court. If Smith then disagreed with the decision of the Warren District Court, he could have appealed it. There is no way for this Court to conclude that Defendants were awarded a usurious interest rate without also concluding that the Default Judgment is invalid, which this Court does not have the power to do. *See In re Isaacs*, 895 F.3d 904, 912-13 (6th Cir. 2018) ("This request for relief effectively asks the bankruptcy court to vacate the state-court judgment, and thus it clearly identifies the state-court judgment as the source of [the plaintiff's] injury.").

The Sixth Circuit recently dealt with a similar situation in *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397 (6th Cir. 2020). In *VanderKodde*, the Sixth Circuit considered a

situation in which defendants allegedly collected an unlawful rate of post-judgment interest via writ-of-garnishment requests. *Id*. at 400. The district court identified the underlying judgments as the source of the plaintiffs' injuries and thereby applied *Rooker-Feldman* to dismiss the case. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 314 F. Supp. 3d 836, 840 (W.D. Mich. 2018).[9]  In reversing, the Sixth Circuit clarified that the source of the injury was actually the "defendants' 'actions in tallying the amount of relief requested,' rather than the state-court judgments themselves." *VanderKodde*, 951 F.3d at 403 (quoting *Van Hoven*, 947 F.3d at 893). In other words, the alleged improper writ "did not flow from the judgments as a natural, inevitable consequence of their existence. Instead, it required independent conduct by defendants." *Id*. at 404.

In the case *sub judice*, Smith's usury argument is that the Default Judgment improperly awarded "interest thereon in accordance to the agreement" because it was unclear if Smith was ever rebated unearned finance charges, in the absence of which there could be no conversion of the Note into one with simple interest. (Pl.'s Resp. Defs.' Mot. Dismiss 9). That determination, however, would necessarily predate the award of interest—i.e., the state court judge would have made the calculation as a prerequisite to awarding interest. Once that decision was made, the Default Judgment explicitly stated that Defendants had a right to interest in accordance with the agreement. Therefore, the subsequent calculation of interest for garnishment purposes was clear on the face of the Note and "flow[ed] from the judgments as a natural, inevitable consequence." As such, the source of Smith's injury was the Default Judgment. This conclusion is further

---

[9] The district court also found that plaintiffs were injured by the writs of garnishment, *id*. at 841, but the Sixth Circuit previously made clear that a writ of garnishment is not a state court judgment. *See Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 892-93 (6th Cir. 2020) (describing a writ of garnishment as merely arising out of a ministerial process).

bolstered by the fact that each of the usury arguments now levied at this Court could have been made to the state court in the first instance or in a motion for reconsideration.[10]

In conclusion, Smith's freestanding usury claim is barred by the *Rooker-Feldman* doctrine.[11]

### D.     Negligence Per Se:  KRS 453.050 and 286.4-533(3)

Defendants also contend that Smith's negligence per se claims fail as a matter of law. (Defs.' Mot. Dismiss 11).  "[N]egligence per se 'is merely a negligence claim with a statutory standard of care substituted for the common law standard of care.'"  *Real Estate Mktg., Inc. v. Franz*, 885 S.W.2d 921, 927 (Ky. 1994) (citation omitted).  The relevant negligence per se statute in Kentucky provides:  "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."  KRS 446.070.  To state a claim under KRS 446.070, the (1) allegedly violated statute must be penal in nature or provide no civil remedy, (2) the person damaged must be within the class of persons the statute is intended to protect, and (3) the injury suffered must be an event which the regulation was designed to prevent.  *Hargis v. Baize*, 168

---

[10] Smith also alleges that he has a right to maintain a separate cause of action for usury under *Sherley v. Trabue*, 85 Ky. 71 (1887).  (Pl.'s Resp. Defs.' Mot. Dismiss 19).  *Sherley*, however, interprets a completely different statutory scheme than the one at hand here, and there is no case law suggesting that *Sherley* should be extended to the present usury statute.

[11] The same fate may not befall Smith's FDCPA claims because challenging allegedly unfair actions taken to secure a state court judgment is not the same thing as challenging the judgment itself.  *See Wood v. Midland Funding, LLC*, 698 F. App'x 260, 263 (6th Cir. 2017) ("An allegation of unlawfully creating a tainted state-court order is not the same as challenging that order."); *Burke v. Lawrence & Lawrence, PLLC*, No. 315-CV-00861, 2018 WL 1440837, at *2-3 (W.D. Ky. Mar. 22, 2018) (noting that the *Rooker-Feldman* "doctrine does not bar a plaintiff from seeking redress for actions taken by a debt collector prior to the entry of a judgment." (citing *Harrington v. DH Capital Mgmt., Inc.*, No. 3:14-CV-627, 2014 WL 5776203, at *3 (W.D. Ky. Nov. 5, 2014))).

S.W.3d 36, 40 (Ky. 2005) (citations omitted); *Alderman v. Bradley*, 957 S.W.2d 264, 267 (Ky. App. 1997).

The statutes that Smith claims Defendants violated are KRS 453.050, which generally governs taxation of costs and attorney's fees,[12] and KRS 286.4-533(3), which allows for "a reasonable attorney's fee in connection with the collection of a loan, actually incurred by the licensee and paid to an attorney who is not an employee of the licensee." (Am. Compl. ¶¶ 93-101, 107-114, 137-145, 151-158). Defendants contend that they have not violated these statutes and that neither statute is penal in nature. (Defs.' Mot. Dismiss 12-14). Smith's response to Defendants' motion reiterates several points of his pleadings, but does not explain how either of these statues are penal in nature. Moreover, these statutes do not prescribe a standard of care that can displace the common law standard of care. Rather, both statutes, especially KRS 453.050, are more akin to a Kentucky law that "simply prescribes procedures, committees, and methods . . . ." *Higgs v. Golden Gate Nat'l Senior Care, LLC*, No. 3:17-CV-00192-CRS, 2018 WL 1997767, at *3 (W.D. Ky. Apr. 27, 2018) (quoting *Pace v. Medco Franklin RE, LLC*, No. 1:12-CV-00132, 2013 WL 3233469, at *5 (W.D. Ky. June 25, 2013)). Similarly, because these statutes merely lay

---

[12] KRS 453.050 provides in full:

> Clerks shall tax one (1) attorney's fee only in the bill of costs of the successful party at the termination of the action, but no attorney's fee shall be taxed in any court if the amount in controversy, exclusive of interest and costs, does not exceed fifty dollars ($50), and no garnishee shall be allowed an attorney's fee. The bill of costs of the successful party shall include, in addition to other costs taxed, the tax on law process and official seals, all fees of officers with which the party is chargeable in the case, postage on depositions, the cost of copy of any pleading or exhibit obtained, the cost of any copies made exhibits and the allowance to witnesses, which the court may by order confine to not more than two (2) witnesses to any one (1) point.

out procedures for a successful party to follow when collecting costs and attorney's fees, it is difficult to ascertain who, if anyone, the statutes are designed to protect.[13]

Furthermore, Smith has not clarified how KRS 286.4-533(3) was violated by Defendants. KRS 286.4-533(3) allows for a creditor to collect "*reasonable* attorney's fees" paid to collect a loan that was "*actually* incurred." Defendants collected on the Note via a 33% contingency fee agreement with former defendant P'Pool & Roy. (Defs.' Mot. Dismiss 3). Smith has not demonstrated that the contingency fee was unreasonable or that it was not incurred by Defendants. Smith contends instead that Defendants misled the state court regarding the attorney's fees, but that argument alleges violations of the FDCPA or the KCPA, not KRS 286.4-533(3).

Finally, Smith has not directed this Court to any case that has allowed a KRS 446.070 negligence per se claim premised on either KRS 453.050 or KRS 286.4-533(3). These claims will be dismissed.

### E.    Abuse of Process

Abuse of process is generally "the irregular or wrongful employment of a judicial proceeding . . . ." *Stoll Oil Ref. Co. v. Pierce*, 337 S.W.2d 263, 266 (Ky. 1960). To properly plead an abuse of process claim, a plaintiff must allege two elements: "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Garcia v. Whitaker*, 400 S.W.3d 270, 276 (Ky. 2013) (citations omitted). A plaintiff must show "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the

---

[13] Compare KRS 453.050 and 286.4-533(3) with a statute like KRS 530.080, which states that "a person is guilty of endangering the welfare of an incompetent person when he knowingly acts in a manner which results in an injury to the physical or mental welfare of a person who is unable to care for himself because of mental illness or intellectual disability." KRS 530.080(1). In *Pace*, this Court had no trouble concluding that an "incompetent person" was clearly the party intended to be protected by this criminal statute. *Pace*, 2013 WL 3233469, at *3.

use of the process," but there is no abuse of process claim "where the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions." *Simpson v. Laytart*, 962 S.W.2d 392, 394-95 (Ky. 1998) (citation omitted).

Smith's abuse of process claim is premised on his allegation that the collection lawsuit was filed for the purposes of "collecting attorney's fees from [him] based on an agreement to which he was not a party to." (Pl.'s Resp. Defs.' Mot. Dismiss 25; Am. Compl. ¶¶ 116, 160). Even if the Court accepts, *arguendo*, that Defendants had a "bad intention" to use the collection action as an excuse to recover attorney's fees, they did nothing more that carry out the collection process "to its authorized conclusion." As previously noted, KRS 286.4-533(3) explicitly authorizes the collection of reasonable attorney's fees actually incurred. The Note, in turn, states: "If we place this note in the hands of an attorney, not our salaried employee, for collection you agree to pay the reasonable fees of our attorney." (Am. Compl. Ex. A, at 1-2). As such, Smith has failed to show how Defendants collection of attorney's fees constituted an improper act in the course of the state court proceeding. To the contrary, the collection of attorney's fees was authorized by the Note, compliant with the relevant statute, and given force by the Default Judgment. Therefore, Smith's abuse of process claim is dismissed.[14]

---

[14] In his response, Smith also states that the rate of attorney's fees violated the FDCPA under *Currier v. First Resolution Investment Corp.*, 762 F.3d 529 (6th Cir. 2014). (Pl.'s Resp. Defs.' Mot. Dismiss 10-11). Defendants' motion to dismiss, however, argues that they are not subject to the FDCPA; it does not address Smith's specific alleged FDCPA violations. (Defs.' Mot. Dismiss 4-6). As such, whether the attorney's fee arrangement violated the FDCPA is a question for another day.

F.     **Unjust Enrichment**

Smith contends that Defendants were unjustly enriched by the Default Judgment and subsequent wage garnishment because Defendants had no legal right to recover court costs or interest.  (Am. Compl. ¶¶ 102-06, 146-50).  Defendants counter that this claim is barred by res judicata and the *Rooker-Feldman* doctrine.  (Defs.' Mot. Dismiss 15).  Unjust enrichment requires a showing of three elements:  "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value."  *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009) (citation omitted).

With regard to Smith's claims for usurious interest, this Court has already held that questioning the interest awarded by the Default Judgment runs afoul of the *Rooker-Feldman* doctrine.  Thus, the interest awarded in that judgment cannot be the basis of an unjust enrichment claim for all the reasons previously discussed.  Smith does contend, however, that even though the Default Judgment awarded court costs, Defendants failed subsequently to file bills of costs in compliance with Kentucky Rule of Civil Procedure ("CR") 54.04(2), which provides that a "party entitled to recover costs shall prepare and serve upon the party liable therefor a bill itemizing the costs incurred by him in the action . . . ."  In other words, this rule "requires that the prevailing party . . . serve the losing party . . . with an itemized bill of costs and give the losing party an opportunity to review the bill and to object thereto."  *Stewart v. Murphy*, No. 2004-CA-000166-MR, 2005 WL 736624, at *3 (Ky. App. Apr. 1, 2005).  Although CR 54.04 does not provide for a time limit, the Kentucky Practice Series suggests that the prevailing party must file a bill of costs within a "reasonable time (presumably 30 days) after judgment."  7 Kurt A. Phillips, Jr., et al., *Kentucky Practice—Rules of Civil Procedure Annotated*, CR 54.04 (6th ed. 2005).

Defendants' res judicata and *Rooker-Feldman* arguments fail because Rule 54.04 provides the procedure a prevailing party must follow to recover costs *after* a judgment providing for costs has been entered.  *See Brett v. Isaac*, No. 2008-SC-000712-MR, 2009 WL 2707092, at *2 (Ky. Aug. 27, 2009) ("Reading the rule provides the obvious-costs are assessed *after* judgment.").  In other words, Smith is not complaining about the award of costs in the Default Judgment; he takes issue with Defendants' failure to follow the proper procedure to recover such costs *after* the judgment was awarded.  As such, for *Rooker-Feldman* purposes, the source of the injury is not the Default Judgment, it is the action (or inaction) of Defendants.  This distinction separates Smith's court costs claim from his interest claim.  His usury claim takes issue with the Default Judgment itself while his costs claim takes issue with Defendants failure to comply with CR 54.04 after the Default Judgment was entered.  *See VanderKodde*, 951 F.3d at 403 (noting that "*Rooker-Feldman* did not apply because the plaintiff's injuries stemmed from the defendant's conduct, not the state-court judgment . . . ." (citation omitted)).  As in *VanderKodde* and distinct from Smith's allegation regarding interest, Smith's claim about Defendants' collection of court costs focuses on Defendants' "'actions in tallying the amount of relief requested,' rather than the state-court judgments themselves." *Id.* (quoting *Van Hoven*, 947 F.3d at 893).  As such, Smith has sufficiently pleaded that Defendants recovered courts costs from Smith that they had no legal right to recover— i.e., they were unjustly enriched.

Defendants' res judicata argument pertaining to court costs fails for similar reasons. "Federal courts must give the same effect to a state court judgment that would be given by a court of the state in which the judgment was rendered." *Hosp. Underwriting Grp., Inc. v. Summit Health Ltd.*, 63 F.3d 486, 494 (6th Cir.1995) (citations omitted).  "Therefore, when asked to give preclusive effect to a prior state court judgment, a federal court must look to the law of the

rendering state to determine whether and to what extent that prior judgment should receive preclusive effect in a federal action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (citation omitted).  In Kentucky, for "further litigation to be barred by claim preclusion, three elements must be present:  (1) identity of the parties, (2) identity of the causes of action, and (3) resolution on the merits." *Lawrence v. Bingham Greenebaum Doll, L.L.P.*, No. 2018-SC-000344-TG, 2019 WL 6906971, at *3 (Ky. Dec. 19, 2019) (citation omitted).

While the current parties may be the same, Smith's cause of action for unjust enrichment is not identical to the previous action.  Defendants' alleged unjust enrichment occurred when they collected costs in the wage garnishment that they were allegedly not legally entitled to, an issue not before nor decided on by the state court.  Defendants contend that there is identity of the causes of action because Smith *could* have objected in the state court action.  (Defs.' Mot. Dismiss 16); *Ventas, Inc. v. Health Care Prop. Inv'rs, Inc.*, 635 F. Supp. 2d 612, 627 (W.D. Ky. 2009).  CR 54.04(2) makes clear, however, that the time for the non-prevailing party's objections is within five days *after the service* of the bill of costs.  Here though, Defendants allegedly never filed or served this bill of costs to trigger Smith's right to object.  How could Smith have objected to a bill of costs he never received?  As such, Smith's unjust enrichment claim as premised on Defendants' collection of court costs is not dismissed.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' First Motion to Dismiss (DN 18) is **DENIED AS MOOT**, and Defendants' Second Motion to Dismiss (DN 28) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's FDCPA and KCPA claims are not dismissed, except insofar as they are premised on the $10 non-filing fee.  Plaintiff's usury claim under KRS 360.020 is dismissed.  Plaintiff's claims under KRS 453.050 and KRS 286.4-533(3)

are dismissed.  Plaintiff's claim for abuse of process is dismissed.  Plaintiff's claim for unjust enrichment as premised on an award of interest is dismissed, but his claim as premised on unlawful court costs is not dismissed.

Greg N. Stivers, Chief Judge
United States District Court

May 26, 2020

cc:     counsel of record

24